Filed 7/9/26  P. v. Thomas CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LACHANCE LARUE THOMAS,<br><br>    Defendant and Appellant. | F088914<br><br>(Super. Ct. No. F15904751)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney, Christina Simpson and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In October 2017, a jury found appellant LaChance Larue Thomas and a codefendant guilty of the first degree, premeditated murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a))[1] of Von Randell Correia, Jr.  The jury also found true an allegation that, as to appellant, a principal was armed with a firearm during the commission of the offense within the meaning of section 12022, subdivision (a) (section 12022(a)).  Appellant was sentenced to 25 years to life, plus one year for the firearm enhancement.  In 2022, appellant filed a petition for resentencing relief under section 1172.6 and requested the appointment of counsel.  After appointing counsel for appellant, the trial court denied the petition at the prima facie stage, finding the record conclusively established appellant was ineligible for resentencing relief as a matter of law.

On appeal, appellant argues the trial court erred by making factual findings, and by drawing on evidence gleaned from the opinion in appellant's direct appeal, the preliminary hearing, and the trial transcript.  The Attorney General disputes that the trial court engaged in any factfinding to deny the petition, and maintains the jury instructions together with the jury's verdict establishes appellant is ineligible for resentencing as a matter of law.

Pursuant to de novo review, we conclude the jury instructions and verdict establish appellant is ineligible for resentencing relief under section 1172.6 as a matter of law.  The jury found appellant guilty of first degree premeditated murder.  The jury was not instructed under any invalid theory of murder or other theory by which malice may have been imputed to appellant merely by his participation in some underlying crime.  Rather, to find appellant guilty of first degree premeditated murder, the two theories of first degree murder liability—together with the instruction for first degree premeditated

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

murder—required the jury to find appellant personally harbored an intent to kill (in addition to the other elements of murder). As such, we affirm.

## FACTUAL BACKGROUND

Based on evidence presented at trial, Thomas and a confederate (Brown) were seen by witnesses at an apartment building's outdoor courtyard around midnight on July 28, 2015. Witnesses saw someone they later identified as Brown walk toward the complex's laundry room. Witnesses saw another man, later identified as appellant, walking behind Brown; one witness saw appellant turn around, and he appeared to walk back to a carport area; a second witness saw appellant peering after Brown behind a wall. After seeing Brown advance toward the laundry room, the witnesses heard gunshots. A gunshot victim was later found at the back of the complex. After the gunshots, witnesses saw Brown leave the courtyard, heard car doors closing in an adjacent parking lot, and saw a car drive away from the apartment complex. An on-duty police officer happened to be in the vicinity and heard the gunshots. Minutes later, the officer stopped the car that had been seen leaving the apartment complex. Brown, appellant and another person were inside the vehicle. The firearm that killed the victim was located approximately 100 feet from where that vehicle was stopped. Gloves found on the floor of the vehicle where Brown was sitting when the vehicle was pulled over tested positive for gunshot residue.[2]

The prosecutor's theory, as evidenced by the firearm enhancements alleged in the information and as argued to the jury, was that Brown shot and killed Correia while appellant directly aided and abetted the murder. The jury was instructed on murder under CALCRIM No. 520, first degree premeditated murder under CALCRIM No. 521, direct aiding and abetting principles under CALCRIM Nos. 400 and 401, and conspiracy to commit murder principles under CALCRIM No. 416.

---

[2]     These facts, provided only for context, are derived from our opinion on appellant's direct appeal. (*People v. Brown* (Sept. 9, 2021, F077143) [nonpub. opn.].)

The jury found appellant and Brown guilty of first degree willful, deliberate and premeditated murder (§§ 187, subd. (a), 189, subd. (a)). As to appellant, the jury found true a firearm enhancement that appellant was a principal in a crime where a firearm was used, regardless of whether appellant was personally armed with a firearm. (§ 12022(a)(1).) Appellant was sentenced to 25 years to life for the first degree murder conviction (§ 190, subd. (a)), and a consecutive one-year term for the firearm enhancement under section 12022(a)(1).

In 2022, appellant sought resentencing relief under section 1172.6, which the People opposed. In 2023, the trial court denied the petition, reasoning as follows:

> "This Court has read and considered the petition and the opposition as well as considered the arguments of Counsel and the record of conviction including transcripts from the trial and preliminary hearing, the verdicts issued by the jurors, and the instructions given to jurors by this Court.

> "Based on this Court's review of the record, the Court finds that [appellant] has failed to establish a prima facie case for relief because the instructions and first degree murder findings, factual findings made by the jurors, show that [appellant] was not convicted of first degree murder based upon felony murder, natural and probable consequence doctrine, or any other theory that imputed malice to him based solely on his participation in the crime. Rather, jurors were instructed on two theories of murder liability, direct aiding and abetting and a conspiracy, direct aiding and abetting pursuant to CALCRIM [Nos.] 400 and 401, and conspiracy based on CALCRIM [No.] 416. Each of these theories require that jurors find and decide the culpability of each defendant separately and each of which theories remain viable … despite the 2019 amendments to Penal Code Sections 188 and 189. Specifically, CALCRIM [No.] 548 … instructed the jurors that they had to make independent findings as to each of the defendants concerning their culpability for first degree murder.

> "The evidence at trial showed that [appellant], while not the actual killer, did, with the intent to kill, assist the actual killer in the commission of the murder in this case. That was the jury finding based upon the instructions that were provided.

4.

"A direct aider and abettor to murder must possess malice aforethought. That is the instruction provided to the Court, or law provided to the Court based on *People v. Gentile* [(2020) 10 Cal.5th 830, 848].

"Also, a conviction of conspiracy to commit murder requires a finding of intent to kill. That's from [*People v. Swain* (1996) 12 Cal.4th 593, 607].

"Each of these theories satisfies the requirement that [appellant] acted with malice aforethought. That was the finding that the jurors had to have made in order to return the verdicts that they did in this case.

"Further, under CALCRIM [No.] 416 the People were required to prove that members of the alleged conspiracy had an agreement and an intent to commit murder.

"So under either theory that was actually presented during the course of the trial, the People were required to prove that [appellant] acted with an intent to kill, and the jurors finding, as reflected in the verdicts, based upon instructions given, establish as a fact that [appellant] had such an intent." (Italics added.)

Appellant did not appeal from this order denying his petition. In October 2024, appellant filed a second petition for resentencing under section 1172.6, which was summarily denied. Appellant appealed from that denial, and our court granted appellant's motion for constructive filing of the notice of appeal, and this court deemed the November 2024 notice of appeal timely filed from the trial court's original 2023 order denying the petition.

## DISCUSSION

### I.      Section 1172.6

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences theory of murder. (Stats. 2018, ch. 1015, § 1, subd. (f).) Under this doctrine, "'"[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime."'" (*People v. Hin* (2025) 17

Cal.5th 401, 441 (*Hin*), quoting *People v. Medina* (2009) 46 Cal.4th 913, 920.) Accordingly, Senate Bill 1437 amended section 188 to provide that, except as to the law governing felony murder, to be convicted of murder, "a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).)

In addition, Senate Bill 1437 limited the scope of the felony-murder rule by "providing that a defendant who was neither the actual killer nor acted with the intent to kill can be liable for murder only if he was a 'major participant in the underlying felony and acted with reckless indifference to human life.'" (*Hin, supra*, 17 Cal.5th at p. 441, quoting § 189, subd. (e)(3).)

Finally, Senate Bill 1437 created a procedural mechanism for those convicted under the theories of murder made invalid pursuant to these changes in the law to seek retroactive relief. (§ 1172.6, subd. (a); *People v. Lewis* (2021) 11 Cal.5th 952, 959–960 (*Lewis*).) Under what is now section 1172.6, the process begins by filing a petition containing a declaration that all the requirements for eligibility are met. (*Id.*, subd. (b)(1)(A).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'" (*People v. Strong* (2022) 13 Cal.5th 698, 708, quoting § 1172.6, subd. (c).) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong, supra*, at p. 708, citing § 1172.6, subd. (c) & *Lewis, supra*, at pp. 970–972; accord, *People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*).)

If, on the other hand, the defendant has made a prima facie showing of entitlement to relief, the court is required to issue an order to show cause. (§ 1172.6, subd. (c).) The court is required to hold an evidentiary hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is guilty of murder or attempted

6.

murder under the law as amended by Senate Bill 1437. (§ 1172.6, subd. (d).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the [defendant] shall be resentenced on the remaining charges." (*Id.*, subd. (d)(3).)

## II.     Discussion

Appellant maintains the trial court impermissibly engaged in factfinding in denying the petition at the prima facie stage, and that the first degree murder theories relevant to appellant could have allowed the jury to convict under a theory of imputed malice. The Attorney General disputes that the trial court's ruling depended on any fact finding or the weighing of any evidence. Even though the trial court made a general reference to the trial evidence, the Attorney General argues this does not supply any basis to presume the court failed to properly and regularly perform its obligations at the prima facie stage.

We review de novo the trial court's denial of the petition at the prima facie stage. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [prima facie eligibility for resentencing is a ""'"purely legal conclusion"'"" reviewed de novo].)

### A.     Information, Jury Instructions, and Jury Verdict Establish Appellant is Ineligible for Relief as a Matter of Law

To find appellant guilty of first degree premediated murder, the jury was instructed on two theories: (1) direct aiding and abetting, and (2) an uncharged conspiracy to commit murder. The jury was instructed under CALCRIM Nos. 400 and 401 on aiding and abetting principles:

Under CALCRIM No. 400, the jury was instructed that "[a] person may be guilty of a crime in two ways: One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator

7.

who directly committed the crime.  [¶]  A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."**3**

Under CALCRIM No. 401, the court instructed as follows:

"To prove that [appellant] is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"One, the perpetrator committed the crime;

"Two, [appellant] knew that the perpetrator intended to commit the crime;

"Three, before or during the commission of the crime, [appellant] intended to aid and abet the perpetrator in committing the crime;

"And four[, appellant's] words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, [appellant] does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.

"If you conclude that [appellant] was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether [appellant] was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him an aider and abettor."

---

**3**     The trial court also read an additional paragraph on aiding and abetting to the jury that was on the slides in the courtroom while the instructions were given:  "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

However, the court noted this paragraph was not applicable and directed the jury as follows:  "that paragraph, I'm reading it because it is on the slide but you are to disregard that paragraph in its entirety.  That does not apply to this case.  That is the third paragraph on the first slide—or the only slide for CALCRIM [No.] 400.  You are to disregard that.  And that will not be among the final jury instructions you will  receive for your consideration during your deliberations."

The court also instructed the jury on conspiracy to commit murder under CALCRIM No. 416. In relevant part, the jury was instructed that, for an uncharged conspiracy to commit murder, the People were required to prove that (1) "[appellant] intended to agree and did agree with one or more co-conspirators to commit murder"; (2) "at the time of the agreement, [appellant] and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder"; (3) "one of the defendants committed at least one of the following overt acts to accomplish murder: Discharging a firearm or going to the shooting location"; and (4) "this overt act was committed in California."

To find appellant guilty of first degree murder, the jury was required, under CALCRIM No. 521, to find appellant acted with an "inten[t] to kill."

To find appellant guilty of first degree murder on the only two theories presented, the jury was required to conclude he personally acted with malice—each theory remains valid after Senate Bill 1437. (*People v. Gentile* (2020) 10 Cal.5th 830, 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Virgen* (2025) 110 Cal.App.5th 440, 451 ["[m]urder liability based on an uncharged conspiracy to commit murder remains a valid legal theory because it requires proof that the defendant acted with express malice regardless of whether he was the actual killer"].)

Because no invalid theory, including any theory that involved imputed malice, was presented to the jury, the jury's guilty finding on first degree premeditated murder necessarily supports a murder conviction under current law. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205 [the petitioner is ineligible for § 1172.6 relief as a matter of law if the jury instructions show that jurors were not instructed on any theory of murder liability that allowed malice to be imputed]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [absence of jury instructions based on any theory of liability affected by Sen. Bill 1437 renders the petitioner ineligible for relief as a matter of law]; cf. *Curiel, supra*, 15 Cal.5th

9.

at p. 471 [given instruction on natural and probable consequences doctrine, jury finding of intent to kill insufficient to conclusively establish the petitioner was liable for murder under current law].)  Because appellant was found guilty of first degree murder, and the jury was instructed only on theories of murder that remain valid after Senate Bill 1437, appellant is ineligible for relief under section 1172.6 as a matter of law.

With respect to the conspiracy instructions, appellant argues that because he was not charged with conspiracy, the jury did not return a verdict finding him guilty of conspiracy to commit murder.  As we understand appellant's argument, because conspiracy to commit murder was uncharged, appellant claims the jury had no occasion to find that appellant had both the specific intent to agree to the conspiracy and to commit murder.  Thus, the fact the jury was instructed on the elements of conspiracy to commit murder does not establish he is ineligible for relief as a matter of law.  Further, appellant argues, the conspiracy instructions were ambiguous, leaving open the possibility the jury imputed malice to him based solely on his conduct in going to the location of the shooting.

We disagree.  Under either theory (aiding and abetting or conspiracy to commit murder), the jury was instructed it had to find appellant personally intended to kill to find him guilty of first degree murder, and it required the jury to find all elements of conspiracy true to convict of first degree murder on that uncharged theory.  The conspiracy instructions did not allow the jury to find appellant guilty merely because he went to the location of the shooting.  Rather, the instructions informed the jury that for conspiracy to commit murder, appellant must have "intended to agree and did agree with one or more co-conspirators to commit murder"; must have, with one or more of the other alleged conspiracy members, "intended that one or more of them would commit murder"; and that one of the defendants committed at least one overt act to accomplish the murder: discharging the firearm or going to the shooting location.  The instructions also explicitly informed the jury that "[s]omeone who merely accompanies or associates with members

10.

of a conspiracy but who does not intend to commit the crime is not a member of the conspiracy." Finally, the instructions made clear the crime that the defendants allegedly conspired to commit was murder. These instructions leave no avenue for the jury to impute malice to appellant for first degree murder based solely on his participation in some other crime or act or his mere presence at the crime scene.

Appellant also argues an aiding and abetting theory did not exclude the possibility that, at an evidentiary hearing, appellant could demonstrate that malice was imputed to him based solely on his participation in a crime. In making this argument, appellant cites *People v. Langi* (2022) 73 Cal.App.5th 972, 984. *Langi*, however, involved a second degree murder conviction and a theory of aiding and abetting an implied malice murder for which the jury received a confusing instruction that may have led the jury to impute malice to the defendant based solely on his participation in an underlying offense. Here, in contrast, appellant was convicted of first degree murder—there was no instructional basis for the jury to find him guilty unless it found he personally harbored an intent to kill.

Appellant argues the prosecutor's closing argument invited the jury to find appellant aided and abetted by going to the location of the shooting, allowing for a possibility the jury convicted appellant based solely on his participation in a crime. We are unpersuaded. The jury instructions eliminated the possibility the jury convicted appellant without finding that he personally harbored malice. To find appellant guilty of first degree murder, the instructions under CALCRIM No. 521 required the jury to find appellant intended to kill (in addition to the other elements of murder). To convict for first degree murder under an aiding and abetting theory under CALCRIM No. 401, the instructions required the jury to find appellant knew the perpetrator intended to commit murder, appellant intended to engage in actions to aid and abet that murder, and appellant's conduct did, in fact, aid in the commission of murder. The jury was also instructed that nothing the attorneys would say is evidence, including their opening

11.

statements and closing arguments.  We must presume that in reaching its verdict, the jury followed these instructions.  (See *People v. Mills* (2010) 48 Cal.4th 158, 200–201 [reviewing court presumes jurors understand and follow the trial court's jury instructions].)

In finding all the elements of first degree murder were met, the jury's verdict necessarily establishes it found appellant guilty of express malice murder under one of two valid theories of liability on which it was instructed, both of which explicitly required that appellant personally harbored an intent to kill (in addition to the other murder elements) beyond a reasonable doubt.  Based on the jury instruction and the jury's verdict, appellant cannot, as a matter of law, demonstrate he cannot presently be convicted of murder under current law.  (§ 1172.6, subd. (a)(3).)

## B.     Trial Court Did Not Engage In Judicial Factfinding

Appellant argues the trial court impermissibly relied on the appellate opinion issued in appellant's direct appeal, the preliminary hearing transcript, and the trial transcripts in finding appellant ineligible for relief at the prima facie stage.  For example, attached to the People's brief filed in opposition to the petition was the prior appellate opinion, which the People invited the trial court to consider.  Appellant also points out the trial court indicated on the record at the hearing that it had considered "transcripts from the trial and preliminary hearing, the verdicts issued by the jurors, and the instructions given to jurors by this Court."  The court noted that "[t]he evidence at trial showed that [appellant], while not the actual killer, did, with the intent to kill, assist the actual killer in the commission of the murder in this case.  That was the jury finding based upon the instructions that were provided."

Although the trial court referenced the preliminary hearing and the trial transcripts, it clearly based its decision only on the instructions that were provided to the jury and the jury's verdict.  Notably, the court relied on nothing in the appellate opinion or the preliminary hearing transcript in making its ruling on the petition.  Further, the court's

comment on what the evidence at trial showed, when considered in context, was a comment on what the jury concluded from the evidence based on the jury instructions and the verdict. The trial court did not conduct any factfinding in reaching its conclusion, nor did it rely on or cite any facts in the appellate opinion; and it did not consider or weigh any evidence admitted at the preliminary hearing or at the trial.

Moreover, even if the court's general comment on the trial evidence could be construed as improper—and we do not interpret the court's ruling in that manner—the trial court's ruling was legally correct. "'"No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in the law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusions."'" (*People v. Zapien* (1993) 4 Cal.4th 929, 976; accord, *People v. Camacho* (2022) 14 Cal.5th 77, 123–124.) Based on the information, the jury instructions, and the jury's verdict, appellant is not eligible for resentencing relief under section 1172.6 as a matter of law. The jury was not instructed on an invalid theory of murder, and in finding appellant guilty of first degree premeditated murder, the jury necessarily, based on the theories of liability on which it was instructed, concluded appellant personally harbored an intent to kill along with all the other elements of first degree murder.

Pursuant to de novo review, we find no error in the trial court's ruling that appellant is ineligible for resentencing under section 1172.6.

## DISPOSITION

The trial court's order denying appellant's petition at the prima facie stage as a matter of law is affirmed.

MEEHAN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DESANTOS, J.

14.